UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCK
AT LOUISVILLE

ANNABETH O. BURDGE                                                        PLAINTIFF

v.                                                      CIVIL ACTION NO. 3:13-CV-218-DW

CAROLYN W. COLVIN, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                            DEFENDANT


**MEMORANDUM OPINION**

Plaintiff Annabeth O. Burdge has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied her application for disability insurance benefits (DIB). Burdge applied for DIB on December 13, 2011, alleging that she was disabled as of December 12, 2010, due to chronic abdominal pain, bipolar disorder, depression, anxiety, endometriosis, post-traumatic stress disorder (PTSD), memory problems and attention deficit disorder (ADD) (Tr. 247). The Commissioner denied Burdge's claim on initial consideration (Tr. 146-149) and on reconsideration (Tr. 157-159). Burdge requested a hearing before an Administrative Law Judge (ALJ) (Tr. 160).

ALJ George A. Jacobs conducted a hearing in Louisville, Kentucky, on October 24, 2012 (Tr. 33-71). Burdge attended with her attorney, Russ Wilkey (Tr. 33). Burdge and vocational expert (VE) William Harpool testified at the hearing (Tr. 39-65, 66-70). Following the conclusion of the hearing, ALJ Jacobs entered a hearing decision on November 6, 2012, that found Burdge is not disabled for the purposes of the Social Security Act (Tr. 9-28).

In his adverse decision, ALJ Jacobs made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since December 12, 2013, the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3. The claimant has the following severe impairments: right knee femoral condyle and MCL injury; chronic abdominal pain status post-multiple surgeries; bipolar disorder; anxiety disorder; depression and attention deficit disorder (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except: the claimant is able to perform occasional postural activities but never climbing of ladders, ropes or scaffolding and must avoid situational hazards like vibration, heights and machinery; and the claimant is able to perform simple repetitive tasks for goal oriented work, but no production rate pace work and is able to have only occasional contact with co-workers and supervisors and no contact with the public.

6. The claimant is unable to perform any past relevant work. (20 C.F.R. 404.1565).

7. The claimant was born on December 19, 1981, and was 28-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a)).

11. The claimant has not been under a disability, as defined by the Social Security Act, from December 12, 2010, through the date of this decision (20 C.F.R. 404.1520(f)).

Burdge sought review of the hearing decision by the Appeals Council (Tr. 5). The Appeals Council denied her request for review, finding no reason under the Rules to review ALJ Jacobs' decision (Tr. 1-4). The present lawsuit followed.

*Background Information.*

Annabeth Burdge, born Dec. 19, 1981, was 30 years old at the time of the administrative hearing in 2012 (Tr. 39). She has two years of college education, is 5' 6" tall and weighs 140 lbs. (Tr. 47-48). Burdge served in the United States Army on active duty between 1999 and 2012, until her medical discharge due to bipolar disorder and abdominal pain, which a medical examination board (MEB) determined prevents her from performing her military duties as a heavy construction equipment operator (Tr. 359-366).

Burdge's medical history while in the Army reflects complaints of chronic low back pain as the result of a training accident that occurred when she fell some 15 feet and landed on her back while attempting to climb a rope in basic training in 1999 (Tr. 360). Burdge complained to the MEB that this chronic low back pain prevents her from sitting for extended periods of time, driving heavy equipment, lifting heavy loads or wearing body armor (Tr. 360). Lumbar spine x-ray examination in May of 2011, however, was negative; and, Burdge denied any treatment with pain injections, chiropractic adjustments, neurosurgery or orthopedic surgery (Id.). Physical examination confirmed essentially a normal range of motion in the spine and normal motor strength.

In February of 2009, Burdge suffered a tear of the medial collateral ligament of her right knee during an airborne infantry parachute jump that necessitated her use of crutches and a cane for approximately a year (Tr. 360). Burdge alleges that her knee injury leaves her in constant

pain and that she needs surgery as a result. An MRI of her right knee obtained in February of 2009, confirmed a 12 mm x 2 mm deep osteochondral defect of the lateral femoral condyle of her right knee associated with mild intensity bone marrow edema and a mild partial tear/sprain of the MCL. (Id.). Burdge reported at the time that operating heavy construction equipment for extended time periods increased her knee pain, as did prolonged walking, squatting, climbing, running and jumping. Her treatment for this knee injury, however, consisted solely of rest, pain medication, physical therapy and use of crutches and a brace. Motor strength in the affected leg was noted to be 4/5 secondary to pain (Tr. 361).

In addition to her complaints of back, knee and abdominal pain (related to multiple abdominal surgeries), Burdge also exhibited bipolar disorder, anxiety and attention deficit disorder while in the military. Her treatment records reflect that she received treatment for both bipolar disorder and anxiety at the Behavioral Health Clinic of the Ireland Army Hospital for several years. Burdge also was referred to the Lincoln Trail Behavioral Health System for inpatient hospital treatment for approximately 2 weeks in October of 2010, following suicidal thoughts related to financial and childcare problems along with depression (Tr. 332-333).

Psychologist Margaret Dubicki diagnosed Burdge with bipolar disorder accompanied by moderate depression and anxiety in June of 2011 (Tr. 361). Both Burdge's mother and her sister, according to Burdge, have been diagnosed with bipolar disorder. Burdge reports treatment with Klonopin for anxiety, Zyprexia for her bipolar disorder, Concerta for adult attention deficit disorder, and Percocet for her abdominal pain (Tr. 250, 361). Psychologist Dubicki concluded that Burdge's mental problems were exacerbated by her active duty Army service (Tr. 361). Burdge was medically discharged from the Army in April of 2012, after more than a decade of service due to the aforementioned medical conditions (Tr. 43).

4

At the administrative hearing before Judge Jacobs, Burdge testified that she now lives with her fourth husband and is visited regularly by her three children in the summer and every holiday (Tr. 40). She and her husband live on her military disability pay (Tr. 41). Burdge is able to drive, although her panic attacks allegedly limit the amount of time she can remain in an automobile (Id.). Burdge acknowledged during the hearing that she has looked for work since her military discharge, but her bipolar disorder prevents her employment (Tr. 44). She related a history of five stomach surgeries that have resulted in painful scarring in her abdomen (Tr. 44). She also experiences back pain from her fall in basic training that limits her ability to lift (Tr. 45). Other than her back and abdominal pain, Burdge informed the ALJ during the hearing that she has no other physical problems that prevent her from working, other than occasional knee pain (Tr. 45-46).

Burdge reported that during the 6-month period before the hearing her mental condition has gotten worse (Tr. 50). She denied that her bipolar medication, Zyprexia, provides substantial relief (Tr. 49-50). Burdge has been under the treatment of a psychiatrist, Dr. Steiner, for monthly visits for the past four years (Tr. 51). This treatment, according to Burdge, has helped her (Id.). She still, however, experiences days when she is unable to get off the couch due to her bipolar condition (Tr. 52).

Burdge denied that she has any hobbies, belongs to any social groups, goes to the movies, reads or exercises (Tr. 56-58). Although Burdge testified that she only used marijuana once while a teenager, her military records reflect that she was disciplined for illicit drug use while in the service immediately prior to her hospital treatment in October of 2010 (tr. 58-59). In addition to her hospital treatment, Burdge related during the hearing that following her hospitalization in the fall of 2010 she was placed into the intensive outpatient program (IOP) for

5

four hours a day prior to her medical discharge from the Army (Tr. 63-66). As she described the IOP, basically Burdge would spend each morning sitting in her platoon sergeant's office doing nothing. (Id.).

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 C.F.R. §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 C.F.R. §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3) The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."). Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

*Findings of Fact 4, 5, 9, 10, 11*

Burdge challenges the factual and legal adequacy of findings 4, 5, 9, 10 and 11 of Judge Jacobs' hearing decision. She first claims without explanation that Judge Jacobs' finding of fact no. 4-- that she does not have an impairment, or a combination of impairments, that meets or medically equals any of the listed impairments of 20 C.F.R. Part 404, Subpart P, App. 1-- is not supported by substantial evidence. Burdge does not identify, however, which specific listed impairment(s) her medical condition allegedly satisfies. The Court therefore concludes that Burdge has waived her potential argument as to finding of fact no. 4.

Issues that are presented in "a perfunctory manner, unaccompanied by some effort at developed argument … are deemed waived." *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). In other words, we decline to create a hypothetical argument for Burdge at step 3 of the sequential evaluation process only for the purpose of determining whether such an argument, had it been adequately made, would have been persuasive when the relevant listed impairments are identified and considered. *See Hollon, ex rel. Hollon v. Comm'r*, 447 F.3d 477, 479 (6th Cir. 2006) (The federal court may properly decline to formulate arguments on behalf of a claimant or to make an open-ended review of the entire administrative record where the claimant has not done so herself). Because Burdge did not identify any particular listed impairment of the listing of impairments that she claims one or more of her severe impairments satisfied, she has failed to carry her burden to establish relief at step 3. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Thacker v. SSA*, 93 Fed.Appx. 725, 727-28 (6th Cir. 2004).

Burdge does present a developed argument in her challenge to finding of fact no. 5 of Judge Jacobs' hearing decision (Tr. 15-26). In this finding, ALJ Jacobs concludes that Burdge retains the RFC to perform light work with certain postural and nonexertional restrictions (Tr. 15). Burdge now maintains that ALJ Jacobs ignored critical evidence of her severe mental and physical impairments in reaching his conclusion that she retains the RFC to perform a limited range of light work. More specifically, Burdge focuses on the opinion of her treating psychiatrist, Dr. Peter Steiner, who treated her for more than approximately 18 months for her psychological problems (Tr. 609, 610-611).

On May 23, 2012, Dr. Steiner, a psychiatrist at the Department of Behavioral Health, at Ft. Knox, Kentucky, wrote a memorandum that contained a description of Burdge's mental health treatment and her resulting nonexertional limitations (Tr. 609). The memorandum states:

> SPC [Specialist] Annabeth Burdge has been under my care at the Dept. of Behavioral Health since November 19, 2010. She had been hospitalized with Bipolar Disorder and Anxiety in October, 2010 and was subsequently placed in IOP for seven months. She was re-hospitalized in IOP for three months in 2012. Her mood remains very labile despite intensive treatment using both meds and psychotherapy. She has racing thoughts, paranoia, and is very impulsive having rage with minimal stressors. SPC Burdge also experiences panic attacks with shortness of breath, racing heart, diaphoresis, and lightheadedness also triggered by stress. She also experiences generalized anxiety and obsessions. PTSD symptoms are a result of previous abuse.
>
> The Army medically retired SPC Burdge for psychiatric and medical issues. The medical issues related to five stomach surgeries causing chronic abdominal pain due to scarring. The abdominal pain prevents her from bending, lifting, and standing/sitting for extended periods of time. Her behavior is extremely erratic and again she is extremely responsive to minimal stress. Her children are not with her due to her mental instability and I cannot imagine a work situation in which Ms. Burdge could maintain much less be successful. In my opinion despite intensive therapy, Ms. Annabeth Burdge is permanently and totally disabled.

(Tr. 609).

Dr. Steiner subsequently prepared a mental residual functional capacity assessment (RFC) for Burdge on July 26, 2012 (Tr. 610-611). Dr. Steiner in that mental RFC report, found Burdge to be severely limited, in other words totally precluded, in her ability to understand and remember detailed instructions, maintain attention and concentration for two straight hours, make simple work-related decisions, complete a normal workday without interruption from psychologically based symptoms, get along with co-workers or peers, maintain socially appropriate behavior and respond appropriately to expected changes in work setting (Id.).

The doctor found Burdge to have moderately severe limitation, or in other words, a substantial impairment, in her ability to remember locations and work procedures, carry out detailed instructions, sustain an ordinary routine without supervision, work in coordination or proximity to others without distraction, interact appropriately with the general public, accept instructions and respond appropriately to criticism, set realistic goals, be aware of normal hazards or travel in unfamiliar settings (Id.).

He found Burdge to be moderately limited, *i.e.*, somewhat impaired, in her ability to carry out short and simple repetitive instructions and to ask simple questions or request assistance (Id.). Dr. Steiner in the same mental RFC assessment also concluded that work-related stressors, including mild stress, would increase the level of Burdge's mental impairment beyond what he previously had indicated on the assessment form. In fact, he answered affirmatively that routine, repetitive, simple or entry level work would actually serve as a stressor to exacerbate Burdge's psychologically based symptoms (Tr. 611).

Burdge now maintains that the May 23, 2012 memorandum and the July 26, 2012 mental RFC assessment of Dr. Steiner conclusively establish her inability to perform substantial gainful activity at any exertional level given her severely debilitating psychological symptoms (DN 9,

FL&S, p. 12). Burdge metaphorically contends in this regard that ALJ Jacobs has ignored "the disability forest for the trees." In other words, she asserts that ALJ Jacobs merely seized upon several isolated references to her psychological symptoms as being "mild," while at the same time completely ignoring her full history of unsuccessful hospitalization for her mental illness.

Burdge also argues that ALJ Jacobs failed to properly apply Social Security Ruling SSR 85-16 in determining her mental RFC. She points to the work assessment prepared by her former commanding army officer, Captain Kari Haravitch, contained in the MEB report dated 27 June, 2011 (Tr. 359-366, 364-365). Capt. Haravitchi in her commander's statement advises that Specialist Burdge does not complete her assigned tasks, is unable to complete an 8-hour duty day, has no well established relationships with her co-workers or supervisors, has diminished attention or performance when significantly stressed, and is not capable of managing her personal affairs or holding a higher position (Tr. 364). The same commander's statement also indicates that Burdge had been assigned an escort to assist her in her personal affairs "as these tasks have become unmanageable to her." (Tr. 364, 385, 387).

Burdge now contends that ALJ Jacobs had no basis on which to ignore these matters - - the opinions of her treating psychiatrist and her former commander. She maintains that in doing so ALJ Jacobs violated the "treating physician rule," which requires that the opinion of a treating physician such as Dr. Steiner be given controlling weight absent good reasons not to do so, reasons that must be set forth in the hearing decision and must be supported by evidence of record so that subsequent reviewers may determine whether the medical opinion of the treating source has been given appropriate weight. Because ALJ Jacobs failed to give controlling weight to Dr. Steiner's opinions and his mental RFC assessment, Burdge concludes that the decision of the Commissioner must be reversed and disability benefits awarded to her.

This argument requires the Court to examine what is commonly referred to as the treating source, or treating physician, rule. Under the treating physician rule, the Commissioner's regulations require that the ALJ will give a treating source's opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). *See Cole v. Astrue*, 661 F.3d 931, 937-39 (6th Cir. 2011) (discussing the treating physician rule). A physician will qualify as a treating source if the claimant sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition." *Smith v. Comm'r of Soc. Security*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502).

The treating physician rule rests on the assumption that a medical professional who has dealt with a claimant over a long period of time for a specific illness will have a deeper insight into the medical condition of the claimant than an individual who may have examined the claimant only once or has merely seen the medical records of the claimant. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citing *Bowman v. Heckler*, 70 F.2d 564, 568 (5th Cir. 1983)). The opinion of a treating source need not be given complete deference, however, if that opinion lacks objective support in the record, is in tension with a prior opinion of the same treating source, lacks meaningful detail, is entirely conclusory, or is in conflict with other evidence of record showing substantial improvement in the claimant's condition. *See White v. Comm'r*, 572 F.3d 272, 285-87 (6th Cir. 2009); *Calvert v. Firstar Financial, Inc.*, 409 F.3d 286, 294 (6th Cir. 2005); *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y*, 25 F.3d 284 (6th Cir. 1994).

Even in those circumstances in which the Commissioner does not give the opinion of a treating physician controlling weight, it may still be given great weight. *White*, 572 F.3d at 286 (citing SSR 96-2p). When an ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must balance a number of factors to evaluate what weight the opinion should be given. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship, frequency of examination, the nature and extent of the treatment provided, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Cole*, 661 F.3d at 937 (citing 20 C.F.R. §404.1527(d)(2)).

As to the importance of these factors when determining the weight to be given the opinion of a treating source, *Cole* explains:

> [T]he Commissioner imposes on its decision makers a clear duty to "always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion 20 C.F.R. §404.1527(d)(2). Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. S.S.R. 96-2p (1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended 'to let claimant's understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed his disabled and therefore might be especially bewildered when told by an administrative bureaucracy that ... he is not." *Wilson*, 378 F.3d at 544.

*Cole*, 661 F.3d at 937-38.

When an ALJ fails to conduct a balancing of the above factors to determine the weight that should be awarded to a treating source opinion, such as occurred in *Cole*, the Sixth Circuit has made clear that it does not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue

14

remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole*, 661 F.3d at 939 (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545)).

ALJ Jacobs addresses the May 23, 2012 memorandum of Dr. Steiner at pp. 17-18 of his hearing decision (Tr. 25-26). First, he correctly dismisses Dr. Steiner's opinion that Burdge is "permanently and totally disabled" as impermissibly invading the purview of the Commissioner (Tr. 25). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)("20 C.F.R.§ 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the Secretary….Section ( e )(3) further elaborates that no 'special significance' will be given to opinions of disability, even if they come from a treating physician.").

The ALJ next correctly notes that, as to Dr. Steiner's opinion that Burdge's chronic abdominal pain prevents her from bending, lifting and standing/sitting for extended periods of time, the doctor is not a treating source since he did not treat Burdge for her abdominal complaints. *See Blakley v Comm'r,* 581 F.3d 399, 407 (6th Cir. 2009)( A physician is a treating source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant ... "with a frequency consistent with accepted medical practice **for the type of treatment and/or evaluation [that is] typical for the [treated condition(s) ].**")(citing 20 C.F.R. § 404.1502)(emphasis added). Further, ALJ Jacobs notes that these specific functional limitations are not precluded by the RFC assessment contained in finding of fact no. 5 of the hearing decision that limits Burdge to a restricted range of light work (Tr. 15, 25). In this respect, ALJ Jacobs instead chose to rely upon the physical functional capacity assessments of the consulting medical experts including that of Dr. Mukherjee (Tr. 19-111).

ALJ Jacobs at p. 18 of his hearing decision then turned to the mental residual functional capacity assessment of Dr. Steiner (Tr. 25-26, 610-11). Based on Dr. Steiner's treatment records from December of 2010, through February of 2012, ALJ Jacobs concluded that the severe mental limitations imposed by Dr. Steiner simply are not supported by his own treatment records (Tr. 26, 422-440, 485, 505, 517, 583, 590, 593). Specifically, ALJ Jacobs noted in his decision that Dr. Steiner's treatment records "are replete with findings and assessments of 'mild' symptoms and mental limitations of no greater than 'moderate' severity and provide little support for the level of dysfunction described in his report of May 2012…." (Tr. 26). ALJ Jacobs ultimately concludes that "neither report from Dr. Steiner provides any support for his assertion that the claimant has been essentially mentally-nonfunctional' since at least July 2009." (Id.).

Upon review of both the record and the extensive hearing decision of ALJ Jacobs, the Court finds no violation of the treating physician rule resulted when the ALJ chose to give little weight to Dr. Steiner's assessments in his May 2012 memorandum or the July 2012 mental RFC assessment (Tr. 609, 610-611). The ALJ hearing decision reflects a meticulous review of the claimant's medical history that is supported by extensive citations to specific portions of those records. The Court has conducted its own independent review of Burdge's Army service-related medical records, as well. That review confirms that ALJ Jacobs has not "overlooked the forest for the trees."

First, Dr. Steiner's own treatment notes do not support the severity of the mental limitations that he imposes on Burdge.[1] Treatment examination notes of Dr. Steiner's psychiatric examinations routinely reveal only mild psychomotor agitation and/or mildly pressured speech (Tr. 422, 440, 485, 505, 517, 583, 590). The same treatment notes repeatedly

---

[1] Burdge concedes that ALJ Jacobs properly declined to afford any weight to Dr. Steiner's ultimate conclusion that she is disabled from all substantial gainful activity.

16

confirm that Burdge was fully oriented with at least fair insight and judgment (Id.). Burdge also reported to Dr. Steiner consistently during those examinations that she had no side effects from her medication (Id.). By early January 2012, Burdge reported improved sleep, appetite and energy (Tr. 593). She made essentially the same report of improving sleep, appetite and energy in February of 2012 (Tr. 583).

Nowhere in the treatment notes of Dr. Steiner is there found any indication of the extraordinarily severe mental limitations that the doctor includes in his mental RFC assessment of July 26, 2012 (Tr. 610-611). To the contrary, Dr. Steiner routinely indicates that Burdge, when compliant with her mental health treatment, has a global assessment of functioning (GAF) score of 60, which would indicate at most only moderate symptoms or a moderate level of impairment in her social, occupational and educational functioning (Tr. 440, 485, 505, 517, 583, 590, 593). While a GAF score is not determinative, the consistently high GAF scores imposed by Dr. Steiner, when Burdge was compliance with treatment, contradict the conclusions of his memorandum and mental RFC assessment.

The Court also notes that the written conclusions of the MEB contained in its report of June 27, 2011, prepared by Dr. Julio DePena and physician's assistant Kathleen Tatman, also conflict with the report and assessment provided by Dr. Steiner. Dr. DePena in the MEB report specifically concludes that

> Prognosis is good for [Burdge's] bipolar disorder as long as [Burdge] … continues to take the medications for this disorder and to seek care as needed. [Specialist] Burdge is better able to control her anxiety through learning strategies. This condition should continue to improve with practice.

(Tr. 365).

17

This opinion of Dr. DePena appears to have been based in part on a psychological evaluation performed by psychologist Margaret Dubicki of the Psychology Clinic at the Ireland Army Hospital (Tr. 449-458). Dubicki assessed Burdge with moderate bipolar disorder without psychotic symptoms and anxiety. (Tr. 456). Dubicki assessed Burdge with a current GAF score of 55. (Id.)..Although Dubicki gave Burdge a poor prognosis for future military service, she concluded that Burdge's prognosis for occupational and social development in civilian life was fair (Tr. 457).

Likewise, the state agency mental health consultants, Drs. Vanderplate, Sillers and Perritt, also concluded upon review of Burdge's service-related mental health treatment records that she had no severe mental limitations such as those reported by Dr. Steiner (Tr. 23-24, 110-113, 125-126, 140-142). In fact, Dr. Vanderplate found that Burdge was not significantly limited in 13 of the 20 areas of functioning and only moderately limited in seven other areas of functioning (Tr. 110-113). Dr. Sillers concluded that Burdge was not significantly limited in 15 of the 20 areas of functioning and only moderately limited in 5 other areas of functioning (Tr. 125-26). Dr. Perritt reached similar conclusions in his own review (Tr. 140-41). Accordingly, the opinions of three reviewing mental health professionals further support the determination of ALJ Jacobs that the extremely severe mental limitations imposed by Dr. Steiner are not entitled to great weight given Dr. Steiner's own treatment notes, the conclusion of the MEB review and those of the reviewing state agency mental health experts. For these reasons, the Court concludes that substantial evidence supports the hearing decision of ALJ Jacobs in this respect and that ALJ Jacobs did not violate the treating physician rule therein.

The final matter for the Court to consider is whether Burdge has preserved her challenge to findings of fact nos. 9, 10 and 11. Burdge in her fact and law summary indicates only that

these findings are not supported by substantial evidence. She does not explain , however, how the findings are deficient in light of the record or the controlling law. For example, in finding of fact 9, ALJ Jacobs determined that transferability of job skills is not material to his disability determination (Tr. 27). Burdge does not explain how transferability of job skills was material. In the absence of any developed argument, the Court considers the issue to be waived.

      Likewise, while Burdge apparently challenges the finding of the ALJ at step five of the sequential evaluation process that there remains alternative work she is able to perform, given her age, education, work experience and RFC, she does not explain why this conclusion is not supported by substantial evidence apart from her reliance on Dr. Steiner's memorandum and mental RFC assessment (Tr 609, 610-11). ALJ Jacobs during the hearing presented the vocational expert with a hypothetical question that accurately reflects Burdge's physical and mental limitations (Tr. 67-68). Based on those limitations and her vocational factors, V.E. Harpool identified a substantial number of jobs in the national economy that Burdge remains capable of performing (Tr. 68-69). Accordingly, the Commissioner carried her burden at step 5 of the sequential evaluation process based on the testimony of V.E. Harpool. *See Ealy v. Comm'r*, 594 F.3d 504, 512-13 (6th Cir. 2010); *Varley v. Sec'y of HHS*, 820 F.3d 777, 779 (6th Cir. 1987). For these reasons, the decision of the Commissioner is **AFFIRMED**.

Cc:    Counsel of Record